## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JENNIFER PAYNE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-1022** |
| **CITY OF HAMMOND, et al.** | **SECTION: "G"(3)** |

## ORDER

Before the Court are the following motions: (1) Defendants City of Hammond and Mayson H. Foster's (collectively, "Hammond Defendants") "Motion for Rule 7(a)(7) Reply on Mayson Foster's Qualified Immunity;"[1] (2): Defendants Drug Enforcement Administration ("DEA"), Rodney Gemar, Alan J. Clesi, and Donald Herrmann (collectively, "Federal Defendants")[2] "Motion to Dismiss;"[3] and (3) Defendant Roddy Devall's ("Devall") "Motion to Dismiss."[4] After considering the pending motions, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant the "Motion for Rule 7(a)(7) Reply on Mayson Foster's Qualified Immunity";[5] grant in part Federal Defendants' "Motion to Dismiss;"[6] and grant in part Devall's "Motion to Dismiss."[7]

---

[1] Rec. Doc. 28.

[2] The Court acknowledges that Rodney Gemar is alleged to have been a police officer with the Hammond Police Department. Rec. Doc. 1 at p. 3. However, because he was allegedly the liaison officer with the DEA, *id.* at p. 5, and because the moving defendants in the motion to dismiss refer to themselves as "federal defendants," for ease of reference, the DEA, Gemar, Clesi and Herrmann are collectively referred to as "Federal Defendants." *See* Rec. Doc. 29-1 at p. 2.

[3] Rec. Doc. 29.

[4] Rec. Doc. 47.

[5] Rec. Doc. 28.

[6] Rec. Doc. 29.

## I. Background

*A.      Factual Background*

In this case, Plaintiff Jennifer L. Payne ("Payne") alleges that the City of Hammond, Chief of Police Devall, police officer Rodney Gemar ("Gemar"), Lieutenant Vince Giannoble, City of Hammond Mayor Mayson H. Foster ("Foster"), the DEA, Senior Investigator Alan J. Clesi ("Clesi"), and Task Force Officer Donald Herrmann ("Hermann") collectively violated 42 U.S.C. § 1983 by falsely accusing and investigating her for "doctor shopping" when she took leave to which she was entitled under the Family Medical Leave Act ("FMLA").[8] According to Payne, she worked for the Hammond Police Department as a police officer since July of 2000, taking sick leave from September 30, 2013 to April 16, 2014.[9] Payne alleges that she was then improperly asked for her medical records and warned about "doctor shopping."[10] According to Payne, in March of 2014, Devall, the chief of police, acting as an anonymous source, contacted the DEA to tell them that Payne was doctor shopping.[11] Payne alleges that DEA agents Clesi and Hermann then visited and interviewed all of Payne's medical and dental care providers without her consent, a warrant, or a subpoena, all of whom signed declarations stating that she was doctor shopping and obtaining controlled substances by fraud and deceit.[12]

According to Payne, on April 16, 2014, Devall placed her on administrative leave without

---

[7] Rec. Doc. 47.

[8] Rec. Doc. 1 at pp. 4–5.

[9] *Id.* at p. 4.

[10] *Id.*

[11] *Id.* at p. 5.

[12] *Id.*

the possibility of working details, and on April 29, 2014, Payne was falsely arrested by Gemar,

liaison officer with the DEA, in retaliation for exercising her legal rights.[13] Payne alleges that,

following the arrest, Devall ordered that her photo and home address be publicized in the press,

in violation of state law and Hammond Police General Orders, and subjecting both Payne and her

children to danger.[14]

**B.**     ***Procedural Background***

Payne filed a complaint in this matter on April 1, 2015, asserting that Defendants violated

her constitutional rights, namely by invading her privacy, falsely arresting her, failing to train

and supervise employees, and retaliating against her.[15] On April 2, 2015, Payne filed an amended

complaint adding claims on behalf of her minor children, John Scott Payne and Lillian Camille

Gautier, as well as claims under the FMLA and City of Hammond General Orders.[16]

Devall filed an answer on August 3, 2015, in which he raised the defense of qualified

immunity.[17] Hammond Defendants filed an answer on August 24, 2015, also invoking the

defense of qualified immunity,[18] and on the same day filed their "Motion for Rule 7(a)(7) Reply

on Mayson Foster's Qualified Immunity."[19] On August 28, 2015, DEA Defendants filed their

---

[13] *Id.* at p. 6.

[14] *Id.*

[15] *Id.* at pp. 6–7.

[16] Rec. Doc. 3.

[17] Rec. Doc. 19.

[18] Rec. Doc. 27.

[19] Rec. Doc. 28.

"Motion to Dismiss."[20] Plaintiff filed oppositions to both motions on September 4, 2015.[21] On October 1, 2015 with leave of Court, DEA Defendants filed a reply memorandum in support of their motion.[22]

On November 17, 2015, Devall filed his "Motion to Dismiss."[23] Plaintiff filed a memorandum in opposition on December 1, 2015.[24]

## II. Parties' Arguments

### A.   *Hammond Defendants' Motion for Rule 7(a)(7) Reply on Mayson Foster's Qualified Immunity*

#### 1.   Hammond Defendants' Arguments in Support of Their Motion

In their motion, Hammond Defendants seek an order compelling Plaintiff to file a Rule 7(a)(7) reply to address Foster's affirmative defense that he is entitled to qualified immunity.[25] Hammond Defendants argue that there are just two single allegations against Foster in the Complaints: (1) that Foster was mayor of the City of Hammond and at all times acted in his official and individual capacity; and (2) that Devall, in a separate, verified petition, stated that prior to Payne's arrest, he met with City of Hammond officials, including Foster, and told them that the city prosecutor had commented that if the chargers against Payne were prosecutable, it would be a "good case."[26]

---

[20] Rec. Doc. 29.

[21] Rec. Docs. 30, 31.

[22] Rec. Doc. 45.

[23] Rec. Doc. 47.

[24] Rec. Doc. 48.

[25] Rec. Doc. 28-1 at p. 1.

[26] *Id.* at p. 2.

Hammond Defendants allege that, as currently drafted, the Complaints contain insufficient allegations to support a Section 1983 claim against Foster.[27] Hammond Defendants claim that a dispositive motion would likely resolve the issue, but in consideration of Fifth Circuit precedent, they first seek an order requiring Plaintiff to file a Federal Rule of Civil Procedure 7(a)(7) reply, also known as a "*Shultea* reply," to set forth allegations to support Plaintiff's claims against Foster.[28]

Hammond Defendants aver that although Plaintiff is required to allege particularized facts to support her § 1983 claims, the heightened pleading standard need not be satisfied in the original complaint, but may arise in a *Shultea* reply as required by the district court.[29] According to Hammond Defendants, the Fifth Circuit noted that raising the qualified immunity defense will ordinarily require a *Shuleta* reply, and a district court's discretion not to order one is narrow when greater detail will assist in the resolution of the defense.[30] Hammond Defendants aver that the Fifth Circuit has also stated that district courts should "routinely require" a plaintiff to file a Rule 7(a)(7) reply when only sparse details of alleged wrongdoing by the official are alleged.[31]

Here, Hammond Defendants claim, Plaintiff fails to allege with specificity or particularity any conduct by Foster which supports a § 1983 claim.[32] Hammond Defendants aver

---

[27] *Id.*

[28] *Id.* at p. 3.

[29] *Id.* (citing *Conerly v. Town of Franklinton*, 2004 WL 1459560, at *5 (E.D. La. June 28, 2004); *Shultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995) (en banc)).

[30] *Id.* at pp. 3–4 (citing *Shultea*, 47 F.3d at 1433–34).

[31] *Id.* at p. 4 (citing *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999)).

[32] *Id.*

that the mere allegation that Foster was present in a room where the city prosecutor remarked that, if an assistant district attorney advises that charges against Payne were prosecutable, "then it would be a 'good case,'" cannot support a § 1983 claim.[33] Hammond Defendants argue that although ordinarily they would move forward with a Rule 12 motion to dismiss, in consideration of the Fifth Circuit's guidance in *Shultea*, they instead ask the Court to require Plaintiff to file a Rule 7(a)(7) reply to set forth specific allegations against Foster, and if she is unable to do so, then Foster will move forward with seeking dismissal of the Section 1983 claims.[34]

### 2.   Plaintiff's Arguments in Opposition

In opposition, Plaintiff argues that *Shultea* replies are ordered at a court's discretion, citing *Davalos v. Johns*, a Fifth Circuit decision, for the proposition that a district court need not order one if the allegations in a plaintiff's complaint are pled with sufficient particularity to respond to the defense of qualified immunity.[35] Plaintiff contends that a *Shultea* reply is not necessary because, under the "notice pleading" standard employed by federal courts, she need only have given the defendants "fair notice of what the . . . claim is and the grounds upon which it rests."[36] Here, Plaintiff avers, she has stated that Foster was in the room during the discussion of Payne's case, had knowledge of the violations to her constitutional rights, and did nothing to prevent them.[37] Because Foster was the mayor, Plaintiff argues, his actions created a custom of

---

[33] *Id.*

[34] *Id.*

[35] Rec. Doc. 38 at p. 3 (citing 460 F. App'x 396, 397 (5th Cir. 2012)).

[36] *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[37] *Id.* at p. 4.

obtaining evidence without a warrant and unlawful arrests.[38] Moreover, Plaintiff claims, Devall, the chief of police, who acknowledged that he and his department are responsible for arrest records and dissemination of information about arrests, reported to Mayor Foster, who bore the ultimate responsibility for those policies.[39]

According to Plaintiff, such allegations are sufficient and do not require a *Shultea* reply.[40] In the alternative, she requests time, prior to filing such a reply, to conduct discovery related to the qualified immunity defense, namely Foster's knowledge of the other defendants' actions, the policies and customs of Foster's office, and interactions with the DEA and prosecutors.[41]

**B.    *Federal Defendants' Motion to Dismiss***

### 1.    Federal Defendants' Arguments in Support of Motion to Dismiss

In their motion, Federal Defendants first note that although Plaintiff sued them pursuant to the Fourth and Fourteenth Amendments of the United States Constitution and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,[42] it is unclear whether Plaintiff also seeks to maintain causes of action for alleged violations of the Family and Medical Leave Act, Louisiana state law, and "City of Hammond Orders."[43] For the purposes of the instant motion, however, Federal Defendants assume that such claims are not being brought against them.[44]

---

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] 403 U.S. 388 (1971).

[43] Rec. Doc. 29-1 at p. 2 n.1.

[44] *Id.*

Federal Defendants allege that it is well-settled that a *Bivens* claim against a federal agency is barred by the doctrine of sovereign immunity.[45] Therefore, Federal Defendants argue, Plaintiff cannot sustain a claim that the DEA failed to adequately hire, train, and supervise their employees, leading to the violations of Plaintiff's rights.[46] Federal Defendants allege that it is also well-settled that a *Bivens* claim cannot be maintained against Gemar, Clesi or Herrmann in their official capacities, and thus such claims should also be dismissed.[47]

Next, Federal Defendants aver that Gemar, Clesi and Herrmann are entitled to qualified immunity for the claims against them in their individual capacities.[48] First, they argue, Plaintiff's Fourteenth Amendment claims fail as a matter of law because the Fourteenth Amendment, by definition, requires state action, and Gemar, Clesi and Herrmann acted as federal officials.[49]

Federal Defendants argue that Plaintiff's Fourth Amendment claims against Clesi and Herrmann, who allegedly visited and interviewed all of Payne's medical and dental health care providers without her consent, a warrant or a subpoena, also fail because the dispositive inquiry is whether it would have been clear to a reasonable officer in the agents' position that interviewing Payne's health care providers was unlawful in the situation they confronted: namely, a tip that Payne was doctor shopping and obtaining controlled substances by fraud and

---

[45] *Id.* at p. 4 (citing *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 486 (1984); *Garcia v. United States*, 666 F.2d 960, 966 (5th Cir. 1982); *Armstead v. Napolitano*, 2012 WL 686286, at *3 (E.D. La. March 2, 2012)).

[46] *Id.*

[47] *Id.* at p. 5 (citing *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999); *Williamson v. United States Dep't of Agric.*, 815 F.2d 368, 373 (5th Cir. 1987)).

[48] *Id.*

[49] *Id.* at p. 6 (citing *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954)).

deceit.[50] According to Federal Defendants, Plaintiff's "vague and conclusory assertions" are insufficient to meet that standard.[51]

Federal Defendants aver that Plaintiff's Fourth Amendment claims against Gemar also fail because they provide no specific facts regarding Gemar's alleged actions, and merely conclude that Gemar "ratified the acts complained of herein and falsely arrested Jennifer L. Payne."[52] According to Federal Defendants, in order to establish that an arrest violated Payne's Fourth Amendment rights, Plaintiff must demonstrate that there was no probable cause to support her arrest.[53] Furthermore, Federal Defendants argue, an arrest made with a valid arrest warrant is not unconstitutional, and a complaint based on such an arrest is subject to dismissal for failure to state a claim.[54] Federal Defendants aver that Plaintiff points to no facts which, if proven, demonstrate that Payne was falsely arrested or that her Fourth Amendment rights were otherwise violated.[55]

Finally, in the alternative, Federal Defendants argue that Plaintiff should be ordered to file a Rule 7(a)(7) reply to meet the Fifth Circuit's heightened pleading standard for qualified immunity cases.[56] Federal Defendants contend that Plaintiff's "bald allegations" cannot overcome Defendants' qualified immunity defense," and that without clarification, a

---

[50] *Id.* at p. 7 (citing *Wood v. Moss*, 134 S. Ct. 2056, 2067 (2011)).

[51] *Id.* at pp. 7–8.

[52] *Id.* at p. 8 (citing Rec. Doc. 1).

[53] *Id.* (citing *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004)).

[54] *Id.* (citing *Maier v. Green*, 458 F. Supp. 2d 711, 718 (W.D. La. 2007)).

[55] *Id.*

[56] *Id.* at p. 9.

determination cannot be made as to whether or not the Fourth Amendment rights allegedly violated were "clearly established" at the time of the incidents.[57]

### 2. Plaintiff's Opposition to DEA Defendants' Motion to Dismiss

In her opposition, Plaintiff first agrees to voluntarily dismiss certain claims, namely: her *Bivens* claims against the DEA, and against Gemar, Clesi, and Herrmann in their official capacities, as well as her Fourteenth Amendment claims against "the federal employees, Gemar, Clesi, and Her[r]mann."[58] She argues, however, that she reserves all rights against the agents in their individual capacities for her claims of Fourth Amendment violations and 42 U.S.C. §§ 1983 and 1988. She also reiterates her argument that, if the Court finds that she has not met her burden of overcoming a claim of qualified immunity, she should be permitted limited discovery on the issue in order to file a *Schultea* reply.[59]

Payne next argues that she has met the "minimal burden' under "notice pleading" to state a *Bivens* claim against Federal Defendants.[60] Plaintiff alleges that her allegations that Clesi and Herrmann visited and interviewed all of her medical and dental care providers conforms with Federal Rule of Civil Procedure 8(a) and plainly states that they violated her Fourth Amendment right to protection from unreasonable search and seizure, which allowed the DEA to "manufacture questionable evidence against" her.[61] Furthermore, she claims, her complaint alleges that Gemar, Hammond's liaison officer with the DEA, acted on the illegal evidence and

---

[57] *Id.*

[58] Rec. Doc. 37 at p. 2.

[59] *Id.* at p. 3 (citing *Backe v. LeBlanc*, 691 F.3d 645 (5th Cir. 2012)).

[60] *Id.*

[61] *Id.* at p. 4.

falsely arrested her in violation of her Fourth Amendment right against unreasonable seizure.[62]

Such allegations, Payne argues, are sufficient to satisfy the notice pleading requirement.[63]

In addition, Plaintiff contends, Federal Defendants are not entitled to qualified immunity because Plaintiff had a clearly established right to privacy in her personal medical information.[64] Quoting *Minnesota v. Carter*, a U.S. Supreme Court case, Plaintiff argues that privacy of medical information falls squarely within the definition of a reasonable expectation of privacy, which is "one that has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society."[65] Plaintiff alleges that the federal government has placed protections on the release of medical information through the Health Insurance Portability and Accountability Act (HIPAA), which protects all "individually identifiable health information" held or transmitted by a covered entity.[66] Payne argues that because Defendants interviewed her medical providers without a warrant or her consent, and because she had a reasonable expectation of privacy in her medical information, their actions clearly amount to a violation of her Fourth Amendment rights.[67]

According to Payne, Federal Defendants are not entitled to qualified immunity because a reasonable agent should have known that a warrant is required to access such information.[68]

---

[62] *Id.*

[63] *Id.* at p. 5.

[64] *Id.*

[65] *Id.* (quoting 525 U.S. 83, 88 (1998)).

[66] *Id.* at pp. 5–6 (citing 45 C.F.R. § 160.103).

[67] *Id.* at p. 6.

[68] *Id.*

11

Plaintiff quotes *Ferguson v. City of Charleston*, a U.S. Supreme Court case, which stated that "[t]he reasonable expectation of privacy enjoyed by the typical patient undergoing diagnostic tests in a hospital is that the results of those tests will not be shared with nonmedical personnel without her consent."[69] Plaintiff also relies on *State v. Skinner*, a Louisiana Supreme Court case, for the proposition that "the right to privacy in one's medical and prescription records is an expectation of privacy that society is prepared to recognize as reasonable . . . we hold a warrant is required to conduct an investigatory search of medical and/or prescription records."[70] According to Payne, the law in this case is clearly established, and thus the qualified immunity defense should fail because a reasonably competent public official should know the law governing his conduct, and moreover HIPAA protections are widely known and understood throughout society.[71]

Furthermore, Payne argues, she has sufficiently stated a claim against Gemar, who she alleges arrested Payne based on testimony obtained illegally and through fraud and deceit.[72] Payne contends that Gemar did not have probable cause, and did not have sufficient knowledge at the moment he arrested Payne to conclude that she was committing an offense.[73] According to Payne, "[a] reasonable officer would have known that speaking with medical professionals without a valid warrant, subpoena, or consent is a direct violation of civil rights . . . ."[74]

---

[69] *Id.* (quoting 532 U.S. 67, 78 (2001)).

[70] *Id.* (quoting 2008-2552 (La. 5/5/09); 10 So. 3d 1212, 1218).

[71] *Id.* (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982)).

[72] *Id.* at p. 7.

[73] *Id.*

[74] *Id.*

### 3.       Federal Defendants' Arguments in Further Support of Motion to Dismiss

In reply, Federal Defendants[75] argue that although Plaintiff has acknowledged the authority of *Schultea v. Wood*, she simultaneously contradicts Fifth Circuit precedent by claiming that "notice pleading" is sufficient in this suit.[76] Federal Defendants aver that *Schultea* held that, once a defendant assets the defense of qualified immunity, a district court may order the plaintiff to submit a reply after evaluating the complaint under the ordinary pleading standard.[77] According to Federal Defendants, the Fifth Circuit has stated that "a plaintiff cannot be allowed to rest on general characterizations, but must speak to the factual particulars of the alleged actions, at least when those facts are known to the plaintiff and are not peculiarly within the knowledge of defendants."[78] Federal Defendants aver that Plaintiff's complaint clearly fails to set forth allegations of fact focusing specifically on the conduct of the federal officials who allegedly caused Payne's injury.[79]

Furthermore, Federal Defendants contend, even limited discovery is premature at this time.[80] Federal Defendants argue that prior to permitting discovery, the Court must make an initial determination that Plaintiff's allegations, if true, would defeat qualified immunity.[81]

---

[75] In their motion, Federal Defendants allege that the reply is brought on behalf of Gemar, Clesi, and Herrman in their individual capacities, as Plaintiffs have voluntarily dismissed the DEA and the federal officials in their official capacities. Rec. Doc. 45 at p. 1 n.1. For ease of reference, the Court continues to refer to the parties as Federal Defendants.

[76] *Id.* at p. 1.

[77] *Id.* at p. 2 (citing *Schultea v. Wood*, 47 F.3d 1427, 1433–34 (5th Cir. 1995) (en banc).

[78] *Id.* (quoting *Schultea*, 47 F.3d at 1432).

[79] *Id.*

[80] *Id.*

[81] *Id.* (citing *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014)).

According to Federal Defendants, in *Zapata v. Melson*, the Fifth Circuit vacated a district court's discovery order where the court deferred ruling on the defendants' threshold qualified immunity defense, and instead issued an order allowing the plaintiffs limited discovery on the issue of qualified immunity after observing that whether the defendants are entitled to qualified immunity is "certainly contested."[82] Federal Defendants argue that the Fifth Circuit found that the district court did not explicitly rule on the defendants' qualified immunity defense, and that its failure to make an initial determination that the plaintiffs' allegations, if true, would defeat qualified immunity, fell short of the finding required in the Fifth Circuit for allowing even limited discovery after a qualified immunity defense has been raised.[83] Therefore, Federal Defendants aver, Plaintiffs' request for limited discovery at this time should be denied.[84]

**C.    *Devall's Motion to Dismiss***

**1.    Devall's Arguments in Support of Motion to Dismiss**

In support of his motion to dismiss, Devall begins by incorporating the arguments set forth by Hammond Defendants in their motion for a Rule 7(a)(7) reply.[85] Next, Devall argues that Plaintiff nowhere in her complaint specifies any "clearly established" right that she alleges was violated, any specific Constitutional provisions or Louisiana law provisions, or any specific facts that would support an assertion that Devall violated the FMLA.[86]

Devall contends that Payne has asserted that Devall violated unspecified provisions of the

---

[82] *Id.* (citing *Zapata*, 750 F.3d at 484).

[83] *Id.* (citing *Zapata*, 750 F.3d at 485).

[84] *Id.* at p. 4.

[85] Rec. Doc. 47-1 at p. 1.

[86] *Id.* at p. 2.

U.S. Constitution, unspecified federal laws, including but not limited to the FMLA, unspecified Louisiana state laws, and unspecified City of Hammond General Orders by "retaliating against" Payne, invading her privacy, falsely arresting her, publicizing her photo and address, and placing her on administrative leave.[87] On that basis, Devall alleges, Plaintiff cannot maintain a § 1983 claim because she has failed to allege the existence of any constitutional right or provision which Devall's alleged conduct would have violated.[88] Similarly, Devall argues, Payne's assertion that his actions violated "City of Hammond General Orders" does not rise to the level of actionable misconduct governed by § 1983.[89]

Even affording Payne every benefit of the doubt, Devall claims, it appears clear that she has conceded that Devall did not "wrongfully arrest" Payne, as others effectuated her arrest, and therefore Devall cannot be liable under the 4th Amendment.[90] Similarly, Devall argues, Plaintiff has alleged that others, not Devall, interviewed her healthcare providers and obtained signed declarations from each.[91] Devall argues that, although he is alleged to have disseminated medical information about Payne to others, there is no private right of action to enforce allegedly wrongful dissemination of one's medical information.[92] Devall also avers that Plaintiff's bare assertion that Devall "retaliated" against her cannot support a claim under § 1983, as the only constitutional protection from retaliation arises from the First Amendment, which prohibits only

---

[87] *Id.* at pp. 3–4.

[88] *Id.* at p. 4.

[89] *Id.*

[90] *Id.*

[91] *Id.*

[92] *Id.*

"retaliation" against a public employee who speaks in his personal capacity on a matter of prominent public concern, facts not implicated here.[93] Devall contends that "[e]ven painting Payne's allegations with the broadest possible brush to somehow encompass a notion that she 'exercised' sick leave rights and was then arrested, or even harassed (for which there are no allegations), Payne failed to allege 1st Amendment protected activity."[94]

According to Devall, the gravamen of Plaintiff's Complaint as it relates to Devall revolves around his alleged "publicizing her photo and address."[95] Devall alleges that even if such a claim were cognizable under § 1983, Devall is entitled to qualified immunity because Louisiana Code of Criminal Procedure article 228 required the release to the public of Payne's booking information, as a matter of public record.[96] Devall cites *Johnson v. City of Pineville*, a Louisiana Third Circuit Court of Appeals case, in which Devall alleges that the court held that a city's refusal to release booking information, which it claimed was confidential, was a violation of the Louisiana Constitution and the Public Records Act.[97] Therefore, Devall argues, his conduct was not only objectively reasonable, but in fact mandated by Louisiana law.[98]

Anticipating that Payne will argue that her address and photograph should not have been released under Louisiana Revised Statute 40:2532, Devall argues that the statute in question does

---

[93] *Id.* at p. 5 (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983); *Garcetti v. Cabellos*, 547 U.S. 410, 422–24 (2006)).

[94] *Id.*

[95] *Id.* at p. 6.

[96] *Id.*

[97] *Id.* at p. 7 (citing 9 So. 3d 313 (La. App. 3d Cir. 2009)).

[98] *Id.*

not apply to a criminal investigation and ensuing arrest of an officer.[99] The provision, Devall alleges, deals solely with police officers under internal affairs or departmental, internal investigations, not criminal arrests of officers.[100] Thus, Devall argues, Plaintiff fails to state a claim upon which relief can be granted, and qualified immunity furthermore bars relief to Plaintiff under § 1983.[101]

Finally, Devall also argues that Payne cannot maintain an FMLA action against him, nor one for retaliation, as a matter of law.[102] Devall contends that Payne also fails to state a claim for invasion of privacy, because Louisiana Code of Criminal Procedure article 228 expressly overrides and supplants any privacy claims in light of the fact that Payne was arrested.[103]

## 2.    Payne's Arguments in Opposition to Motion to Dismiss

In opposition, Payne argues that she has adequately stated a claim under § 1983 that Devall has violated her Fourth Amendment rights.[104] Payne alleges that to sustain such a claim, she must establish that Devall acted under the color of state law and caused or contributed to an alleged violation.[105] According to Payne, she did so by alleging that Devall contacted the DEA to tell them that Payne was doctor shopping, disseminated her private medical information to others, and that as a result of his unfounded accusations, DEA agents obtained her medical

---

[99] *Id.*

[100] *Id.* (citing La. R.S. 40:2531A).

[101] *Id.* at p. 8.

[102] *Id.* at pp. 8–11.

[103] *Id.*

[104] Rec. Doc. 48 at p. 3.

[105] *Id.* (citing *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996)).

information without her consent or a warrant.[106] Payne claims that because she had a reasonable expectation of privacy in her medical information, Devall's actions clearly amounted to a violation of her Fourth Amendment right against unreasonable searches and seizures, a violation that led to her false arrest, which is a violation of § 1983.[107]

Payne argues that as chief of police and the person who instigated the "investigation" into Payne's alleged doctor shopping, Devall is liable for her invasion of privacy and false arrest.[108] Payne claims that, as head of his department, Devall is ultimately responsible for the disciplinary action taken against his officers and the basis for them.[109] According to Payne, Devall did not act as an ordinary citizen when he reported her alleged crime, but as the chief of police and as her superior.[110] Payne contends that ordering the false arrest was just as much a violation of Payne's civil rights as actually arresting her.[111]

Plaintiff avers that Devall is not entitled to qualified immunity because he violated a clearly established law by placing Payne on administrative leave for exercising her right to a necessary medical leave, and by sharing her medical information and working with the DEA to interview Payne's doctors.[112] Plaintiff also argues that, despite Devall's arguments to the contrary, the release of her address and photograph was not reasonable because Louisiana law

---

[106] *Id.*

[107] *Id.* at p. 4 (citing *Nesmith v. Alford*, 318 F.2d 110, 126 (5th Cir. 1963)).

[108] *Id.*

[109] *Id.*

[110] *Id.*

[111] *Id.*

[112] *Id.* at p. 6.

prohibits releasing to the news media a law enforcement officer's home address, photograph, or any information that may be deemed otherwise confidential, with respect to an investigation of a police officer.[113] Payne contends that because she was still an active police officer and under investigation when she was arrested, she was subject to the statute, which exists to protect officers from having their information released to the public, thereby subjecting them to possible—and in this case actual—harm.[114] Payne cites *City of Baton Rouge v. Capital City Press, LLC*, a Louisiana First Circuit Court of Appeals case, for the proposition that internal affairs records from a police department may be released to the public, but only after some redaction.[115] According to Payne, while booking records are part of the public record, the booking information of a police officer is distinguishable due to the public nature of an officer's work and the inherent danger that comes with it.[116]

Finally, Payne argues that she has adequately stated a claim under the FMLA.[117] She also reiterates her argument that a Rule 7(a)(7) reply is not necessary, but that should one be ordered, she requests limited discovery, and in the alternative requests leave to amend the complaint.[118]

### III. Law and Analysis

**A.**   *Standard on a Motion to Dismiss*

The Federal Rules of Civil Procedure provide that an action may be dismissed "for failure

---

[113] *Id.* (citing La. R.S. 40:2532).

[114] *Id.* at p. 7.

[115] *Id.* (citing 2012-1349 (La. App. 4th Cir. 3/20/13); 112 So. 3d 348, 353).

[116] *Id.*

[117] *Id.* at p. 8 (citing *Modica v. Taylor*, 465 F.3d 174, 186 (5th Cir. 2006)).

[118] *Id.* at p. 10.

to state a claim upon which relief can be granted."[119] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[120] "Factual allegations must be enough to raise a right to relief above the speculative level,"[121] and a claim is facially plausible when the plaintiff has pled facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[122] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[123]

### B.    Legal Standard on Qualified Immunity

To plead a § 1983 claim, Payne is required to allege facts demonstrating that (1) the defendant violated the Constitution or federal law, and (2) that the defendant was acting under the color of state law while doing so.[124] Where a defendant is a federal officer, on the other hand, victims of a violation of the Federal Constitution have a right under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics* to recover damages against the officer in federal court despite the absence of any statute conferring such a right.[125] A qualified immunity analysis

---

[119] Fed. R. Civ. P. 12(b)(6).

[120] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[121] *Twombly*, 550 U.S. at 556.

[122] *Id.* at 570.

[123] *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, C.J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *Carbe v. Lappin*, 492 F.3d 325, 328 & n.9 (5th Cir. 2007).

[124] *See Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005).

[125] 403 U.S. 388 (1971).

is identical under either cause of action.[126]

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[127] Qualified immunity is an "immunity from suit rather than a mere defense to liability."[128] In this manner, "[o]ne of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive."[129] Once a defendant invokes the defense of qualified immunity, the plaintiff carries the burden of demonstrating its inapplicability.[130]

In *Saucier v. Katz*, the Supreme Court set forth a two-part framework for analyzing whether a defendant was entitled to qualified immunity.[131] Part one asks the following question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[132] Part two inquires into whether the allegedly violated right is "clearly established" in that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[133] The Court does not have to address these two questions sequentially; it can proceed with either inquiry first.[134]

---

[126] *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

[127] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[128] *Pearson v. Callahan*, 555 U.S. 223, 237 (2009).

[129] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

[130] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

[131] 533 U.S. 194 (2001).

[132] *Id.* at 201.

[133] *Id.* at 202.

[134] *See Pearson*, 555 U.S. at 236 ("On reconsidering the procedure required in *Saucier*, we conclude that,

In the context of a motion to dismiss, "a district court must first find 'that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.'"[135] "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."[136] After the district court determines that plaintiff's pleadings meet this requirement, "if the court remains 'unable to rule on the immunity defense without further clarification of the fact,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'"[137]

## C.     Schultea *Reply*

In this case, all of the moving defendants have asserted a qualified immunity defense. In reviewing the claims against them, this Court is guided by both the ordinary pleading standard and by a heightened one.[138] Relying upon Federal Rule of Civil Procedure 7(a)(7), the Fifth Circuit in *Schultea v. Wood* explained that once a defendant asserts qualified immunity, a district court may order the plaintiff to submit a reply after evaluating the complaint under the ordinary pleading standard.[139] Pursuant to *Schultea*, this reply "must be tailored to the assertion of qualified immunity and fairly engage its allegations."[140] "Heightened pleading requires

---

while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."); *see also Cutler v. Stephen F. Austin State Univ*., 767 F.3d 462, 469 (5th Cir. 2014).

[135] *Backe*, 691 F.3d at 648 (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.2d 991, 994 (5th Cir. 1995)).

[136] *Id.* at 645.

[137] *Id.* (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 506 (5th Cir. 1987).

[138] *Schultea v. Wood*, 47 F.3d 1427, 1433–34 (5th Cir. 1995) (en banc).

[139] *Id.*

[140] *Id.* at 1433.

allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff's injury."[141]

The Fifth Circuit noted in *Schultea* that an assertion of a qualified immunity defense will ordinarily require the *Schultea* reply, and a district court's discretion not to order one is narrow when greater detail will assist in the resolution of the defense.[142] Indeed, "[f]aced with sparse details of claimed wrongdoing by officials, trial courts ought routinely require plaintiffs to file a reply under Federal Rule of Civil Procedure 7(a) to qualified immunity defenses."[143]

### D.    *Analysis*

As a preliminary matter, the Court notes that Plaintiff has agreed to voluntarily dismiss certain claims, namely: her *Bivens* claims against the DEA, and against Gemar, Clesi, and Herrmann in their official capacities, as well as her Fourteenth Amendment claims against "the federal employees, Gemar, Clesi, and Her[r]mann."[144] It appears that therefore no claims remain pending against the DEA, and so the Court will dismiss those claims.

Although Plaintiff claims in opposition to all three pending motions that her complaint need only satisfy the "notice pleading" requirement of Federal Rule of Civil Procedure 8(a)(2), the defendants correctly note that, once an affirmative defense of qualified immunity has been raised, a district court may order the plaintiff to submit a reply that is "tailored to the assertion of qualified immunity and fairly engage its allegations."[145] "Heightened pleading requires

---

[141] *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999).

[142] *Schultea*, 47 F.3d at 1434.

[143] *Reyes*, 168 F.3d at 161.

[144] Rec. Doc. 37 at p. 2.

[145] *Schultea*, 47 F.3d at 1433.

allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff's injury."[146] Moreover, although Federal Defendants and Devall argue that the claims against them should be dismissed because they are entitled to qualified immunity, the Fifth Circuit has found that a district court's failure to order a Rule 7 reply where a complaint fails to allege facts against public officials with sufficient particularity to be reversible error.[147]

Plaintiff asserts that an additional pleading in the form of a Rule 7(a)(7) reply is unnecessary under the circumstances of this case. Specifically, she contends that she has supported her claims against all of the moving defendants with sufficient precision and factual specificity to show that the defendants violated her constitutional rights, and that such rights were "clearly established."

In her Complaint, Plaintiff alleges the following with regard to each of the moving defendants:

- In March of 2014, Devall, acting as an anonymous source, contacted the DEA Tactical Diversion Division to tell them that Payne was doctor shopping in the area of Hammond, Louisiana.[148]

- In March and April of 2014, Clesi and Herrmann visited and interviewed all of Payne's medical and dental care providers without her consent, a warrant or a subpoena, and had each provider sign a declaration stating that she was doctor shopping and obtaining controlled substances by fraud and deceit.[149]

- Devall, in a verified petition for declaratory relief, injunctive relief, and other claims ("Verified Petition") filed in the 21st Judicial District Court for the Parish of Tangipahoa on February 11, 2015, stated that he had spoken with an assistant district attorney on two occasions, and she advised him that the probable criminal charges against Payne were

---

[146] *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999).

[147] *Id.*

[148] Rec. Doc. 1 at ¶ 19.

[149] *Id.* at ¶ 20.

prosecutable.[150]

- The same assistant district attorney allegedly signed an affidavit on March 26, 2015 denying that the two conversations took place and stating that she never spoke with Devall regarding criminal charges against Payne.[151]

- Gemar, liaison officer with the DEA, "ratified the acts complained of herein and falsely arrested Jennifer L. Payne."[152]

- Devall stated in his Verified Petition that, prior to Payne's arrest, he met with City of Hammond officials, including Foster, and stated that the city prosecutor had stated that if an assistant district attorney advised that the charges against Payne were prosecutable, "then it would be a 'good case.'"[153]

- On April 16, 2014, Devall placed Payne on administrative leave without the possibility of working details, and on April 29, 2014, Payne was falsely arrested by Gemar "in retaliation for her exercising rights guaranteed to her as a City of Hammond police officer."[154]

- After Payne's arrest, Devall specifically and directly ordered that her photo and home address be publicized in the press.[155]

- The City of Hammond failed to adequately train and supervise employees.[156]

She further alleges that Federal Defendants, as well as Devall and Foster, authorized and/or ratified her arrest and administrative leave, and that Federal Defendants and Devall furthermore authorized and/or ratified the publication of Payne's photo and address.[157] Payne claims that all

---

[150] *Id.* at ¶ 21.

[151] *Id.*

[152] *Id.* at ¶ 22.

[153] *Id.* at ¶ 23.

[154] *Id.* at ¶ 24.

[155] *Id.* at ¶ 25.

[156] *Id.* at ¶ 29.

[157] *Id.* at ¶¶ 11, 13.

of the defendants "separately and in concert with each other, engaged in acts and commissions which constituted the deprivation of the rights, privileges and immunities of the plaintiff, and while these acts were carried out under color of law, they had no justification or excuse in law, . . . and were instead gratuitous, illegal, improper and unrelated to any activity in which federal employees, the Chief of Police and public employees may appropriately and legally engage in the course of carrying out their duties."[158] She also asserts that, at all times, each of the defendants had the power and duty to restrain the other defendants and prevent them from violating the law, but each failed and refused to perform that duty and thereby became a party to the injuries inflicted upon the plaintiff.[159] Finally, she claims that all of the defendants "violated the provisions of the United States Constitution and laws, Louisiana state law and City of Hammond General Orders by retaliating against Plaintiff, invading her privacy, falsely arresting her, publicizing her photo and address and placing her on administrative leave."[160]

While Plaintiff argues an additional pleading in the form of a Rule 7(a)(7) reply to Defendants' answers will do little to further detail these allegations at this juncture, the Court disagrees. Although Plaintiff's allegations regarding Clesi, Herrmann, and Devall are somewhat more detailed, her allegations regarding Hammond Defendants and Gemar are largely conclusory and lacking in detail.  For example, with regard to Plaintiff's claim that Gemar falsely arrested her, Federal Defendants recite the legal standard that an arrest made with a valid arrest warrant is not unconstitutional, and a complaint based on such an arrest is subject to dismissal for failure to

---

[158] *Id.* at ¶ 15.

[159] *Id.* at ¶ 16.

[160] *Id.* at ¶ 30.

state a claim.[161] Neither Plaintiff nor Federal Defendants allege, however, whether Gemar had obtained a warrant for Payne's arrest. Similarly, Plaintiff states that Gemar "ratified" the unlawful behavior that Plaintiff alleges, but she states no facts to support such a claim, other than that Gemar arrested her—an allegation that, standing alone, does not appear to defeat Gemar's claim of qualified immunity.

Similarly, Plaintiff's only specific allegation against Hammond Defendants is that Foster was present during a conversation in which Devall recounted, second-hand, a conversation regarding whether Payne could be criminally charged, and that the City of Hammond failed to adequately supervise or train its employees. In the context of a motion to dismiss, "a district court must first find 'that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.'"[162] "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."[163] Such bare-bone allegations and legal conclusions, as present in Payne's complaint, do not allow the Court to draw the reasonable inference that Hammond Defendants are liable for any constitutional violations, nor that they cannot maintain a qualified immunity defense. Payne does not alert the defendants regarding which "clearly established" laws Hammond Defendants violated in sufficient detail to meet the heightened pleading requirements established in qualified immunity cases.

Although Payne describes Clesi, Herrmann, and Devall's alleged conduct in more detail

---

[161] Rec. Doc. 29-1 at p. 8 (citing *Maier v. Green*, 458 F. Supp. 2d 711, 718 (W.D. La. 2007)).

[162] *Backe*, 691 F.3d at 648 (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.2d 991, 994 (5th Cir. 1995)).

[163] *Id.* at 645.

than that of the other moving defendants, it is not clear from the face of her complaint that they cannot maintain a qualified immunity defense. For example, Payne alleges that Clesi and Herrmann interviewed each of her health and dental care providers, but she states no facts regarding the substance or context of those interviews.[164] She repeatedly alleges that Clesi and Herrman's conduct violated her Fourth Amendment rights because the Louisiana Supreme Court has recognized, for example, "the right to privacy in one's medical and prescription records," but makes no claims regarding whether her medical records were ever shared with any of the defendants. Similarly, although Plaintiff appears to allege that Devall's conduct violated her Fourth Amendment rights, she does not appear to state any facts suggesting that Devall partook in an unlawful search or seizure. Because personal involvement is essential to an individual's liability under § 1983,[165] supervisors are not automatically and vicariously liable for their subordinates' alleged bad acts.[166] Therefore, it is not clear to the Court at this stage which of Devall's acts, if any, Plaintiff is alleging violated the Fourth Amendment.

Federal Defendants and Devall urge the Court to grant their motions to dismiss on the basis of qualified immunity, and only in the alternative request the Court to order a *Schultea* reply. However, the Fifth Circuit has generally found that, when faced with a motion to dismiss, a district court ought to allow a plaintiff to file a Rule 7(a)(7) reply before dismissing a case on

---

[164] In *Schultea*, the Fifth Circuit seemingly acknowledged that "a plaintiff cannot be allowed to rest on general characterizations, but must speak to the factual particulars of the alleged actions, at least when those facts are known to the plaintiff and are not peculiarly within the knowledge of defendants." *Schultea v. Wood*, 47 F.3d 1427, 1432 (5th Cir. 1995). Although certain details about the alleged interviews of Payne's health and dental care providers may be "peculiarly within the knowledge of defendants," the providers who were allegedly interviewed are not named as defendants in this matter, and additional facts may be available to Plaintiff.

[165] *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).

[166] *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987).

the basis of qualified immunity.[167] Because the Court's "discretion not to order [a *Schultea* reply] is very narrow" and the Court is mindful that its failure to order such a reply may be reversible error, the Court finds that, out of an abundance of caution, it must grant their motions insofar as they request that Plaintiff specify her allegations in a Rule 7(a)(7) reply.[168] In light of the fact that Plaintiff repeatedly groups individual defendants together in her complaint regardless of their personal involvement in the specifics of the allegations, and considering that she has failed to specify each element of her claims against the defendants and the specific acts of each defendant related to such claims, the Court herein grants Hammond Defendants' motion for a Rule 7(a)(7) reply, as well as Federal Defendants' and Devall's alternative requested relief of ordering a 7(a)(7) reply.

Plaintiff argues that, if she is required to file a *Schultea* reply, the Court should allow her to partake of limited discovery aimed at addressing the defendants' qualified immunity defense, before she must file the reply. To support her claim that she is entitled to such discovery, Payne cites just one case, *Backe v. LeBlanc*, for the proposition that a court may issue a discovery order "narrowly tailored to uncover only those facts needed to rule on the immunity claim."[169] In *Backe*, however, the Fifth Circuit vacated a district court decision that deferred ruling on a qualified immunity defense until after discovery had taken place.[170] *Backe* reiterated the Fifth Circuit's well-settled rule that, *before* a district court may issue a discovery order narrowly

---

[167] *See Todd v. Hawk*, 66 F.3d 320 (5th Cir. 1995) ("*Schultea* makes it clear that this two-step process—requiring the plaintiff to file a short and plain statement of his claim pursuant to Rule 8(a)(2) followed by a more particularized reply pursuant to Rule 7—is the preferred procedure preceding consideration of a motion to dismiss on grounds of qualified immunity.").

[168] *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996).

[169] Rec. Doc. 37 at p. 3 (citing 691 F.3d 645 (5th Cir. 2012)).

tailored to uncover only those facts needed to rule on the immunity claim, it must first find that the plaintiff "seeking to overcome qualified immunity has pled specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm she has alleged and that defeats a qualified immunity defense with equal specificity."[171] Only after it has done so may a district court issue such a discovery order, and only if the court remains "unable to rule on the immunity defense without further clarification of the facts."[172] Here, the Court is ordering a *Schultea* reply specifically on the basis that Plaintiff's Complaint currently fails to plead specific facts that would allow the Court to draw the reasonable inference that defendants are liable for the harm alleged, and that would defeat a qualified immunity defense if taken as true. Therefore, even a limited discovery order would clearly be premature under Fifth Circuit precedent.

Finally, the Court notes that, in addition to invoking qualified immunity, Devall has argued that the allegations against him—especially Plaintiff's FMLA claims—fail to state a claim as a matter of law under Rule 12(b)(6). In the interest of avoiding piecemeal litigation, however, the Court will defer addressing Devall's concerns regarding the sufficiency of Plaintiff's claims as a matter of law until after Plaintiff files a 7(a)(7) reply, if Devall wishes to reurge his motion at that time.

### IV. Conclusion

For the reasons stated above,

---

[170] *Backe*, 691 F.3d at 649.

[171] *Id.* at 648.

[172] *Id.* (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 506 (5th Cir. 1987).

**IT IS HEREBY ORDERED** that Hammond Defendants "Motion for Rule 7(a)(7) Reply on Mayson Foster's Qualified Immunity"[173] is **GRANTED.**

**IT IS FURTHER ORDERED** that Federal Defendants "Motion to Dismiss"[174] is **GRANTED IN PART**. Plaintiff's *Bivens* claims against the DEA, and against Gemar, Clesi, and Herrmann in their official capacities, as well as her Fourteenth Amendment claims against Gemar, Clesi, and Herrmann are **DISMISSED WITH PREJUDICE.** Therefore, the DEA is **DISMISSED** as a defendant in this suit. The Court also **GRANTS** Federal Defendants' alternative requested relief of ordering Plaintiff to file a Rule 7(a)(7) reply.

**IT IS FURTHER ORDERED** that Devall's "Motion to Dismiss"[175] is **GRANTED IN PART.** The Court **GRANTS** Devall's alternative requested relief of ordering Plaintiff to file a Rule 7(a)(7) reply. The Court also **DEFERS** ruling on Devall's request to dismiss Plaintiff's claims for failure to state a claim under Rule 12(b)(6).

**IT IS FURTHER ORDERED** that within 30 days from the date of entry of this Order, Plaintiff shall file a Rule 7(a)(7) reply in response to the defendants' assertions of qualified immunity. Therein, Plaintiff shall delineate specific, concrete facts and dates which pertain to the alleged violations of Plaintiff's rights by these defendants in contravention of 42 U.S.C. § 1983. Plaintiff shall also clearly plead the facts regarding each defendant's personal involvement in each type of claim asserted by Plaintiff, as well as plead, with specificity, which claims are pled against each defendant. Plaintiff shall also clearly plead the facts that she believes would overcome Defendants' claims to qualified immunity.

---

[173] Rec. Doc. 28.

[174] Rec. Doc. 29.

[175] Rec. Doc. 47.

**IT IS FURTHER ORDERED** that defendants may refile their motions to dismiss, if warranted, after Plaintiff has filed her Rule 7(a)(7) reply.

**NEW ORLEANS, LOUISIANA**, this __14th__ day of March, 2016.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**