## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JENNIFER PAYNE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-1022** |
| **HAMMOND CITY, et al.** | **SECTION: "G"(3)** |

## ORDER

Before the Court is Defendant Roddy Devall's ("Devall") "Reurged Motion to Dismiss."[1] After considering the motions, the memorandum in support, the memorandum in opposition, the record, and the applicable law, the Court will grant the motion in part and deny it in part.

## I. Background

### A.    *Factual Background*

In this case, Plaintiff Jennifer L. Payne ("Payne") alleges that Hammond City, Chief of Police Devall, police officer Rodney Gemar ("Gemar"), Lieutenant Vince Giannoble, City of Hammond Mayor Foster, DEA Senior Investigator Alan J. Clesi ("Clesi"), and Task Force Officer Donald Herrmann ("Herrmann") collectively violated 42 U.S.C. § 1983 by falsely accusing and investigating her for "doctor shopping" when she took leave to which she was entitled under the Family Medical Leave Act ("FMLA").[2] According to Payne, she began working for the Hammond Police Department as a police officer in July of 2000, taking sick leave from September 30, 2013

---

[1] Rec. Doc. 65.

[2] Rec. Doc. 1 at 4–5.

1

to April 16, 2014.[3] Payne alleges that she was then improperly asked for her medical records and warned about "doctor shopping."[4] According to Payne, in March of 2014, Devall, the chief of police, acting as an anonymous source, contacted the DEA to inform the agency that Payne was doctor shopping.[5] Payne alleges that DEA agents Clesi and Herrmann then visited and interviewed all of Payne's medical and dental care providers without her consent, a warrant, or a subpoena, and that all of the providers signed declarations stating that she was doctor shopping and obtaining controlled substances by fraud and deceit.[6]

According to Payne, on April 16, 2014, Devall placed her on administrative leave without the possibility of working details, and on April 29, 2014, Payne was falsely arrested by Gemar, liaison officer with the DEA, in retaliation for exercising her legal rights.[7] Payne alleges that, following the arrest, Devall ordered that her photo and home address be publicized in the press, in violation of state law and Hammond Police General Orders, and that this publication subjected both Payne and her children to danger.[8]

**B.   *Procedural Background***

Payne filed a complaint in this matter on April 1, 2015, asserting that Defendants violated her constitutional rights, namely by invading her privacy, falsely arresting her, failing to train and

---

[3] *Id.* at 4.

[4] *Id.*

[5] *Id.* at 5.

[6] *Id.*

[7] *Id.* at 6.

[8] *Id.*

supervise employees, and retaliating against her.[9] On April 2, 2015, Payne filed an amended complaint adding claims on behalf of her minor children, as well as claims under the FMLA and City of Hammond General Orders.[10]

Devall filed an answer on August 3, 2015, in which he raised the defense of qualified immunity.[11] Hammond City and Foster filed an answer on August 24, 2015, also invoking the defense of qualified immunity,[12] and on the same day filed a "Motion for Rule 7(a)(7) Reply on Mayson Foster's Qualified Immunity."[13] On November 17, 2015, Devall filed a "Motion to Dismiss."[14] Plaintiff filed a memorandum in opposition on December 1, 2015.[15]

On March 15, 2016, the Court issued an order granting Hammond City and Foster's "Motion for Rule 7(a)(7) Reply on Mayson Foster's Qualified Immunity," and granting in part Devall's "Motion to Dismiss."[16] The Court directed Payne to file a Rule 7(a)(7) reply in response to Defendants' assertions of qualified immunity.[17] The Court further ordered that in her Rule 7(a)(7) reply, Payne shall: "delineate specific, concrete facts and dates which pertain to the alleged violations of Plaintiff's rights by these defendants in contravention of 42 U.S.C. § 1983;" "clearly plead the facts regarding each defendant's personal involvement in each type of claim asserted by

---

[9] *Id.* at 6–7.

[10] Rec. Doc. 3.

[11] Rec. Doc. 19.

[12] Rec. Doc. 27.

[13] Rec. Doc. 28.

[14] Rec. Doc. 47.

[15] Rec. Doc. 48.

[16] Rec. Doc. 49.

[17] *Id.* at 31.

Plaintiff;" and "clearly plead the facts that she believes would overcome Defendants' claims to qualified immunity."[18]

On April 14, 2016, Payne filed a Rule 7(a)(7) reply.[19] On April 28, 2016, Devall filed a re-urged motion to dismiss.[20] On May 31, 2016, Payne filed an opposition to Devall's motion.[21]

## II. Parties' Arguments

### A.    *Devall's Arguments in Support of the Re-urged Motion to Dismiss*

Devall moves the Court to dismiss all claims pending against him pursuant to Rule 12(b)(6) and on the basis of qualified immunity.[22] Devall adopts all arguments set forth in his prior motion to dismiss and in the motion to dismiss filed by the Hammond Defendants.[23] Devall notes that Payne brings claims against him pursuant to the FMLA, Section 1983, and a conspiracy claim to violate the Fourth Amendment under Section 1983.[24] Devall asserts that Payne has failed to state a claim upon which relief can be granted and that "Devall's properly asserted defense of qualified immunity bars relief under §1983."[25]

Devall contends that Payne has failed to allege any Fourth Amendment violation by

---

[18] *Id.*

[19] Rec. Doc. 54.

[20] Rec. Doc. 65.

[21] Rec. Docs. 74, 75.

[22] Rec. Doc. 65 at 1.

[23] Rec. Doc. 65-1 at 1.

[24] *Id.* at 3.

[25] *Id.*

Devall.[26] He asserts that he did not seize Payne's medical information.[27] He argues that the Rule 7(a)(7) reply only alleges that he may have contacted the DEA to make an allegation against Payne and that he allegedly met with the DEA regarding a "possible" case.[28] Furthermore, Devall avers that Payne failed to allege that he did anything in furtherance of the alleged seizure of her medical information.[29] Therefore, Devall asserts that Payne has failed to set forth any plausible basis for holding him liable for any Fourth Amendment violation or any act he committed in furtherance of a conspiracy.[30]

Devall notes that Payne cites Louisiana Revised Statute § 40:2532, which he contends only bars the release of a law enforcement officer's personal information when there is an internal investigation of the law enforcement officer for disciplinary purposes.[31] Devall contends that Louisiana Revised Statute § 40:2532 does not apply to criminal investigations, and so it does not create a clearly established right of privacy.[32] Moreover, Devall notes that Article 228 of the Louisiana Code of Criminal Procedure mandates the release of "booking information" gathered on all persons, making booking information a public record.[33] Therefore, Devall contends that there is no case clearly establishing that release of booking information on a law enforcement officer

---

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.* at 4.

[31] *Id.*

[32] *Id.*

[33] *Id.*

charged with a crime violates his or her right of privacy.[34]

Next, Deval argues that Payne's claim against him under the FMLA must fail because Payne did not qualify for the FMLA.[35] Devall notes that Payne was on sick leave from September 30, 2013 to April 16, 2014, a period in excess of 12 weeks.[36] Devall contends that the FMLA only offers protection for a 12 week period.[37] Even taking Payne's allegation that Devall expressed his dissatisfaction with Payne taking medical leave as true, Devall asserts that this does not rise to the level of an actionable FMLA violation.[38] Moreover, Devall asserts that it was not an FMLA violation to place Payne on administrative leave the day she returned from her FMLA leave because the 12 week period had expired and Payne was no longer protected under the FMLA.[39]

## B.    *Payne's Arguments in Opposition to the Motion to Dismiss*

In opposition, Payne asserts that she has adequately stated a claim under Section 1983 against Devall for violating her Fourth Amendment rights.[40] Payne contends that Devall contacted the DEA to report that Payne was doctor shopping.[41] Payne argues that Devall disseminated her private medical information to others by taking information from the Human Resources Department regarding Payne's medical condition and providing it to other officers.[42] As a result

---

[34] *Id.* at 5 (citing *Johnson v. City of Pineville*, 9 So. 3d 313 (La. App. 3 Cir. 2009)).

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.* at 5–6.

[40] Rec. Doc. 74 at 7.

[41] *Id.* at 8.

[42] *Id.*

of these unfounded accusations, Payne contends that the DEA agents obtained Payne's medical information without her consent or a warrant.[43] Because Payne had a reasonable expectation of privacy in her medical information, she argues that Devall's actions amount to a violation of her Fourth Amendment right against unreasonable searches and seizures, which led to her false arrest.[44]

Payne notes that for a police chief to be liable under Section 1983, he "must either be personally involved in the acts causing the deprivation of an individual's constitutional rights, or there must be a causal connection between an act of the police chief and the constitutional violation sought to be redressed."[45] Here, Payne contends that Devall personally started the investigation into the alleged doctor shopping, placed Payne on leave, and ordered her arrest.[46] Payne also contends that Devall violated her privacy by ordering that Payne's photo and address be publicized in the press.[47] Payne avers that Devall's motivation for initiating the investigation into her "doctor shopping" was to punish her for taking sick leave.[48] Upon information and belief, Payne alleges that Devall told Gemar to do whatever he had to do, in order to "get rid" of Payne.[49] Therefore, Payne argues that her rights were violated under Devall's "leadership and pursuant to his orders."[50]

---

[43] *Id.*

[44] *Id.*

[45] *Id.* at 9 (quoting *Harvey v. Andrist*, 754 F.2d 569, 572 (5th Cir. 1985)).

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.* at 10.

Next, Payne asserts that she has stated a claim against Devall for violating Louisiana Revised Statute § 40:2532 by releasing Payne's address and photograph.[51] Payne contends that Louisiana law prohibits releasing to the news media a law enforcement officer's home address or photograph.[52] Payne argues that she was an active police officer when she was arrested and so Louisiana Revised Statute § 40:2532 barred Devall from releasing her information.[53] Moreover, Payne notes that other officers have been arrested since her arrest in April 2014, and their personal information was not reported to the press.[54]

Finally, Payne contends that she has stated a claim against Devall under the FMLA and Louisiana Revised Statute § 33:2215(B)(1).[55] Payne asserts that Devall acted as her employer when he placed her on leave.[56] She argues that Devall placed her on leave the day she returned to work, which she contends shows a causal connection between her leave and his decision to retaliate against her.[57] She asserts that the discovery process will produce further evidence that her rights under the FMLA were violated, but she contends that she has plainly stated a claim that Devall violated her rights by placing her on administrative leave the day she returned from FMLA leave.[58] Additionally, Payne contends that Devall is liable under Louisiana Revised Statute

---

[51] *Id.*

[52] *Id.* (citing La. Rev. Stat. § 40:2532).

[53] *Id.*

[54] *Id.* at 11.

[55] *Id.*

[56] *Id.* at 12.

[57] *Id.*

[58] *Id.*

§ 33:2214(B)(1), which she argues grants each employee of the police department of a municipality 52 weeks of sick leave per calendar year.[59]

### III. Law and Analysis

**A.      Standard on a Motion to Dismiss**

The Federal Rules of Civil Procedure provide that an action may be dismissed "for failure to state a claim upon which relief can be granted."[60] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[61] "Factual allegations must be enough to raise a right to relief above the speculative level,"[62] and a claim is facially plausible when the plaintiff has pled facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[63] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[64]

**B.      Legal Standard on Qualified Immunity**

To plead a Section 1983 claim, a plaintiff is required to allege facts demonstrating that: (1) the defendant violated the Constitution or federal law, and (2) that the defendant was acting under

---

[59] *Id.*

[60] Fed. R. Civ. P. 12(b)(6).

[61] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[62] *Twombly*, 550 U.S. at 556.

[63] *Id.* at 570.

[64] *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, C.J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *Carbe v. Lappin*, 492 F.3d 325, 328 & n.9 (5th Cir. 2007).

the color of state law while doing so.[65] The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[66] Qualified immunity is an "immunity from suit rather than a mere defense to liability."[67] In this manner, "[o]ne of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive."[68] Once a defendant invokes the defense of qualified immunity, the plaintiff carries the burden of demonstrating its inapplicability.[69]

In *Saucier v. Katz*, the Supreme Court set forth a two-part framework for analyzing whether a defendant was entitled to qualified immunity.[70] Part one asks the following question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[71] Part two inquires whether the allegedly violated right is "clearly established" in that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[72] The Court does not have to address these two questions sequentially; it can proceed with either inquiry first.[73]

---

[65] *See Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005).

[66] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[67] *Pearson v. Callahan*, 555 U.S. 223, 237 (2009).

[68] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

[69] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

[70] 533 U.S. 194 (2001).

[71] *Id.* at 201.

[72] *Id.* at 202.

[73] *See Pearson*, 555 U.S. at 236 ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."); *see also Cutler*

In the context of a motion to dismiss, "a district court must first find 'that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.'"[74] Heightened pleading in qualified immunity cases requires that plaintiffs "rest their complaint on more than conclusions alone and plead their case with precision and factual specificity."[75] "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."[76]

### C. Analysis

#### 1. Whether Devall is Entitled to Qualified Immunity on Payne's Section 1983 Claims

Devall asserts that his "properly asserted defense of qualified immunity bars relief under §1983."[77] Moreover, Devall contends that Payne has failed to allege any Fourth Amendment violation by Devall.[78] Devall avers that Payne failed to allege that he did anything in furtherance of the alleged seizure of her medical information.[79] Therefore, Devall asserts that Payne has failed to set forth any plausible basis for holding him liable for any Fourth Amendment violation or any

---

v. Stephen F. Austin State Univ., 767 F.3d 462, 469 (5th Cir. 2014).

[74] Backe, 691 F.3d at 648 (quoting Wicks v. Miss. State Emp't Servs., 41 F.2d 991, 994 (5th Cir. 1995)).

[75] Nunez v. Simms, 341 F.3d 385, 388 (5th Cir. 2003) (citing Reyes v. Sazan, 168 F.3d 158, 161 (5th Cir. 1989)).

[76] Backe, 691 F.3d at 645.

[77] Rec. Doc. 65-1 at 3.

[78] Id.

[79] Id.

act he committed in furtherance of a conspiracy.[80] In opposition, Payne asserts that she has adequately stated a claim under Section 1983 against Devall for violating her Fourth Amendment rights.[81] Payne contends that Devall personally started the investigation into the alleged doctor shopping, placed Payne on leave, and ordered her arrest.[82] Payne also argues that Devall disseminated her private medical information to others by taking information from the Human Resources Department regarding Payne's medical condition and providing it to other officers.[83] Payne also contends that Devall violated her privacy by ordering that Payne's photo and address be publicized in the press.[84]

"Qualified immunity shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known."[85] As stated *supra*, the qualified immunity analysis consists of two inquiries: (1) whether, taken in the light most favorable to the plaintiffs, the facts alleged show that the officer's conduct violated a constitutional right; and, if the plaintiff sufficiently alleges a violation of a constitutional right, then (2) whether the right was clearly established at the time of the incident, such that it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right."[86] The Fifth Circuit

---

[80] *Id.* at 4.

[81] Rec. Doc. 74 at 7.

[82] *Id.* at 9.

[83] *Id.* at 8.

[84] *Id.* at 9.

[85] *Gates v. Texas Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 418–19 (5th Cir. 2008) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005)).

[86] *Id.*; *Aucoin v. Haney*, 306 F.3d 268, 272 (5th Cir. 2002)).

has further determined that, if the law was clearly established, then courts must decide whether the defendant's conduct was objectively reasonable.[87] A government official's conduct is objectively reasonable when "all reasonable officials in the defendant's circumstances would have then known that the conduct violated the Constitution."[88]

Here, Payne alleges in her complaint and her Rule 7(a)(7) reply that: (1) in March of 2014, Devall, acting as an anonymous source, contacted the DEA Tactical Diversion Division to tell them that Payne was doctor shopping in the area of Hammond, Louisiana;[89] (2) Devall told Gemar to do whatever he had to do, in order to "get rid" of Payne;[90] (3) Devall was heavily involved in the investigation from the beginning and was sent all evidence against Payne;[91] (4) on April 2, 2014, Devall, Gemar, Clesi, and Herrmann, met at the Hammond Police station to discuss Payne and a possible case against her;[92] (5) in a verified petition filed in state court Devall stated that he had spoken with an assistant district attorney on two occasions, and she advised him that the probable criminal charges against Payne were prosecutable;[93] (6) on April 16, 2014, Devall placed Payne on administrative leave without the possibility of working details and threatened that her retirement would be taken away if she were charged with "doctor shopping;"[94] and (7) after

---

[87] *Id.*

[88] *Id.* (citing *Hampton v. Oktibbeha County Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007)).

[89] Rec. Doc. 1 at ¶ 19; Rec. Doc. 54 at ¶ 9.

[90] *Id.* at ¶ 14.

[91] *Id.* at ¶ 15.

[92] *Id.* at ¶ 16.

[93] Rec. Doc. 1 at ¶ 21.

[94] *Id.* at ¶ 24; Rec. Doc. 54 at ¶ 27.

Payne's arrest, Devall specifically and directly ordered that her photo and home address be publicized in the press.[95] Thus, Payne asserts that Devall is liable because he "personally started the investigation into the alleged doctor shopping, placed Ms. Payne on leave and ordered her arrest."[96] Payne also contends that Devall violated her privacy rights by ordering that her "photo and address be publicized in the press."[97]

First, the Court will consider whether Devall is entitled to qualified immunity against Payne's allegation that Devall started the investigation into the alleged doctor shopping, placed Payne on leave,[98] and ordered her arrest for doctor shopping. Commencing with the second prong of the *Saucier* framework, in a recent Order granting qualified immunity to DEA agents Clesi and Herrmann and Officer Gemar, this Court determined that Payne had not shown that it was clearly established that interviewing a doctor regarding alleged criminal activity of a patient without a warrant or the patient's consent violated the patient's constitutional rights.[99] Likewise, here the Court finds that Payne has also not shown that it is a violation of a clearly established right for an individual to report alleged doctor shopping to the DEA, placing an individual on administrative leave following an arrest, or order an individual's arrest based on an investigation that gathered information from doctors regarding alleged criminal activity. Even construing Payne complaint liberally to allege that Devall "directed" the DEA agents to start the investigation, which Payne

---

[95] Rec. Doc. 1 at ¶ 25; Rec. Doc. 54 at ¶ 32.

[96] Rec. Doc. 74 at 9.

[97] *Id.*

[98] To the extent Payne argues that Devall placing her on administrative leave violated the FMLA that issue is discussed *infra*.

[99] Rec. Doc. 104.

alleges included investigatory techniques that violated her constitutional rights, Payne has not shown that it was clearly established that interviewing a doctor regarding alleged criminal activity of a patient without a warrant or the patient's consent violated the patient's constitutional rights.[100] Therefore, Payne has failed to satisfy the second prong necessary to overcome Devall's qualified immunity defense. Accordingly, the Court finds that Devall is entitled to qualified immunity on Payne's claim under Section 1983 that Devall began an investigation against her and ordered her arrest.

The Court also notes that Payne argues in her opposition to Devall's motion that Devall disseminated her private medical information to others by taking information from the Human Resources Department regarding Payne's medical condition and providing it to other officers.[101] However, Payne did not make any such allegation in her complaint or her Rule 7(a)(7) reply. Even if the Court were to consider this additional allegation, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm [s]he has alleged and that defeat a qualified immunity defense with equal specificity."[102] The Court provided Payne with an opportunity to file a Rule 7(a)(7) reply, and she failed to allege any specific facts regarding Devall's alleged dissemination of her private medical information to other officers in the Hammond Police Department. Thus, Payne has failed to overcome Devall's qualified immunity defense by failing to show either (1) a constitutional violation or (2) that the right was clearly established.

---

[100] *Id.*

[101] Rec. Doc. 74 at 8.

[102] *Backe*, 691 F.3d at 645.

Second, the Court will consider whether Devall is entitled to qualified immunity against Payne's allegation that Devall violated her privacy rights by ordering that her photo and address, booking information obtained upon Payne's arrest, be publicized in the press. As noted above, to plead a Section 1983 claim, a plaintiff is required to allege facts demonstrating that: (1) the defendant violated the Constitution or federal law; and (2) that the defendant was acting under the color of state law while doing so.[103] Payne asserts that Devall violated Louisiana Revised Statute § 40:2532 when he publicized her booking information to the press.[104] Payne does not point to any federal law that Devall violated in publicizing her booking information. Construing her complaint liberally, it appears that Payne alleges that publicizing her booking information generally violated her right to privacy. However, Payne has not alleged the source of her privacy right or how the publication of an arrestee's photo and address after an arrest violated any such right. Thus, Payne has failed to overcome Devall's qualified immunity defense by showing a violation of her constitutional rights. Moreover, Payne has not pointed to any clearly established federal law to show that publication of an arrestee's booking information violates an individual's constitutional rights. The Supreme Court has found that it is not a per se constitutional violation to publicize a criminal investigation before trial.[105] Accordingly, the Court finds that Devall is entitled to qualified immunity on Payne's claim under Section 1983 that Devall ordered that the booking information obtained following Payne's arrest be publicized to the press.

---

[103] *See Atteberry*, 430 F.3d at 252–53.

[104] Rec. Doc. 74 at 10.

[105] *See, e.g. Skilling v. United States*, 561 U.S. 358, 384 (2010) (quoting *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 554 (1976)) ("But 'pretrial publicity—even pervasive, adverse publicity—does not inevitably lead to an unfair trial.'").

### 2. Payne's Section 1983 Conspiracy Claim against Devall

Devall argues that he is entitled to qualified immunity as to the Section 1983 conspiracy claim against him.[106] Payne argues that she has properly alleged a Section 1983 conspiracy claim against Devall, because she has alleged that Devall conspired with Gemar, Clesi, and Herrmann to illegally seize Payne's medical information.[107] "A conspiracy may be charged under Section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but a conspiracy claim is not actionable without an actual violation of Section 1983."[108] A defendant is entitled to qualified immunity from a Section 1983 conspiracy claim if he is entitled to qualified immunity from the underlying Section 1983 claims.[109] Accordingly, because the Court found *supra* that Devall is entitled to qualified immunity from the underlying Section 1983 claims, Devall is entitled to qualified immunity from the Section 1983 conspiracy claim against him.

### 3.     Whether Payne has Stated a Claim under Louisiana Revised Statute § 40:2532

Initially, the Court notes that Devall does not argue that he is entitled to qualified immunity under state law as to Payne's state law claim under Louisiana Revised Statute § 40:2532. "In evaluating a motion to dismiss a state claim on the grounds of qualified immunity, federal courts

---

[106] Rec. Doc. 65-1 at 3–4.

[107] Rec. Doc. 74 at 5.

[108] *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (internal citation and quotation omitted) (holding that a Section 1983 claim is not actionable where all the defendant officers are entitled to qualified immunity as to the underlying Section 1983 claims).

[109] *See Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187–88 (5th Cir. 1990), *abrogated on other grounds*, *Martin v. Thomas*, 973 F.2d 449, 455 (5th Cir. 1992). *See also Hill v. City of Seven Points*, 31 F. App'x 835 (5th Cir. 2002).

must apply the state's substantive law of qualified immunity."[110] Accordingly, because Devall has not provided any briefing on Louisiana's substantive law of qualified immunity, the Court will address whether Payne has stated a claim under Louisiana state law.

Payne asserts that she has stated a claim against Devall for violating Louisiana Revised Statute § 40:2532 by releasing Payne's address and photograph.[111] Payne contends that Louisiana law prohibits releasing to the news media a law enforcement officer's home address or photograph.[112] Devall contends that Louisiana Revised Statute § 40:2532 applies only where there are internal investigations of law enforcement officers for disciplinary purposes.[113] Devall asserts that Louisiana Revised Statute § 40:2532 does not apply to criminal investigations.[114] Moreover, Devall notes that Article 228 of the Louisiana Code of Criminal Procedure mandates the release of "booking information" gathered on all persons, making booking information a public record.[115]

Article 228(A) of the Louisiana Code of Criminal Procedure provides that "[i]t is the duty of every peace officer making an arrest . . . promptly to conduct the person arrested to the nearest jail or police station and cause him to be booked." Pursuant to Article 228(B), "[a] person is booked by an entry, in a book kept for that purpose, showing his name and address, a list of any property taken from him, the date and time of booking . . . The book and booking information summaries shall always be open for public inspection." In *Johnson v. City of Pineville*, the Louisiana Third

---

[110] *Brown v. Miller*, 519 F.3d 231, 239 (5th Cir. 2008).

[111] Rec. Doc. 74 at 10.

[112] *Id.* (citing La. Rev. Stat. § 40:2532).

[113] Rec. Doc. 65-1 at 4.

[114] *Id.*

[115] *Id.*

Circuit held that booking information is a public record subject to disclosure under Louisiana's Public Record Act.[116] Thus, an arrestee's booking information is not protected from disclosure to the public under Louisiana law.

However, Payne argues that Louisiana Revised Statute § 40:2532 should apply to preclude Devall from releasing her booking information because she was a police officer at the time of her arrest. That statute provides:

> No person, agency, or department shall release to the news media, press or any other public information agency, a law enforcement officer's home address, photograph, or any information that may be deemed otherwise confidential, without the express written consent of the law enforcement officer, with respect to an investigation of the law enforcement officer.[117]

While Louisiana Revised Statute § 40:2532 suggests that it applies to all investigations of law enforcement officers, reading the statute as a whole shows that it applies to information gathered during administrative investigations, not criminal investigations. Louisiana Revised Statute § 40:2532 is contained in Chapter 25 of Title 40 of the Louisiana Revised Statutes. Chapter 25 is titled "Rights of Law Enforcement Officers While Under Investigation." Louisiana Revised Statute § 40:2531(A) provides that "[t]he provisions of this Chapter shall apply only to police employees . . . who are under investigation with a view to possible disciplinary action, demotion, or dismissal." Thus, the statute appears to differentiate between criminal and administrative investigations. Likewise, in *O'Hern v. Dep't of Police*, the Louisiana Supreme Court interpreted Louisiana Revised Statute § 40:2531(B)(7), which provides procedures for conducting administrative investigations of police officers but states that "[n]othing in this Paragraph shall

---

[116] 2008-1234 (La. App. 3 Cir. 4/8/9); 9 So. 3d 313, 316–17.

[117] La. Rev. Stat. § 40:2532.

limit any investigation of alleged criminal activity."[118] The Louisiana Supreme Court stated that "[t]he plain language of the statute suggests a criminal investigation is distinct from a civil administrative investigation."[119] Therefore, *O'Hern* further supports the proposition that Louisiana Revised Statute § 40:2532 applies only to administrative proceedings, not criminal proceedings.

Payne alleges that when she was arrested on April 29, 2014, Devall "specifically and directly ordered that her photo and home address be publicized in the press."[120] Therefore, based on Payne's own allegations, it is clear that her address and photograph were released in relation to the criminal investigation against her, not an administrative investigation such that Louisiana Revised Statute § 40:2532 would protect against the release of her address and photograph.

Payne relies on *City of Baton Rouge/Parish of East Baton Rouge v. Capital City Press, L.L.C.*[121] There, a newspaper sought Internal Affairs Division ("IAD") files of the Baton Rouge Police Department.[122] The Louisiana First Circuit determined that the IAD files were subject to disclosure subject to certain redactions.[123]  Specifically, the court concluded that "photographs of police officers . . . any home addresses, home telephone numbers, social security numbers, and drivers' license numbers . . . and any medical information" contained in the IAD files was properly deemed confidential pursuant to Louisiana Revised Statute § 40:2532.[124]

---

[118] 13-1416 (La. 11/8/13); 131 So.3d 29, 31.

[119] *Id.*

[120] Rec. Doc. 1 at 6.

[121] 2007-1088, 2007-1089 (La. App. 1 Cir. 10/10/08); 4 So.3d 807.

[122] *Id.*

[123] *Id.* at 22.

[124] *Id.*

*Capital City Press, L.L.C.* is distinguishable from the instant case because it involved release of Internal Affairs Division files, *i.e.* files that were likely obtained in the course of administrative investigations, not booking information obtained during an arrest in a criminal investigation. As noted above, the Louisiana Supreme Court has determined that "a criminal investigation is distinct from a civil administrative investigation."[125] Payne does not point to any caselaw establishing that Louisiana Revised Statute § 40:2531(A) bars a police department from releasing booking information of police officers arrested in connection with a criminal investigation. Moreover, under Louisiana Code of Criminal Procedure Article 228(B) booking information is a public record subject to disclosure under Louisiana's Public Records Act.[126] Accordingly, the Court concludes that Payne has failed to state a claim against Devall for violating Louisiana Revised Statute § 40:2532 by releasing Payne's address and photograph, *i.e.* booking information obtained following her arrest.

### 4.    Whether Payne has Stated a Claim under the FMLA

As an initial matter, the Court notes that Devall does not argue that he is entitled to qualified immunity on Payne's FMLA claim. Moreover, the Fifth Circuit has held that a state actor is not entitled to qualified immunity from suit in his individual capacity under the FMLA because the employee has a clearly established statutory right to medical leave under the FMLA.[127]

---

[125] *O'Hern*, 131 So.3d at 31.

[126] *Johnson*, 9 So. 3d at 316–17. The Court notes that Payne's Rule 7(a)(7) reply alleges that "the Hammond Fire and Police Civil Service Board found that Chief Devall did violate city policy and the state public information law. He has since been terminated from his position as Chief of Police." Rec. Doc. 54 at 6. However, Payne does not allege what city policy or state public information law the Hammond Fire and Police Civil Service Board found that Devall violated. Even if the Hammond Fire and Police Service Board found that Devall violated Louisiana Revised Statute § 40:2532, the Court would not be bound by that determination without additional information as to the claims involved or the issues raised during the proceeding.

[127] *Bellow v. LeBlanc*, 550 F. App'x 181, 184 (5th Cir. 2013).

Accordingly, the Court will address whether Payne has stated a claim under the FMLA.

Devall moves the Court to dismiss the FMLA claims against him on the ground that Payne's complaint alleges that she took sick leave from September 30, 2013 to April 16, 2014, a period in excess of 12 weeks.[128] Devall asserts that it was not an FMLA violation to place Payne on administrative leave the day she returned from her FMLA leave because the 12 week period for FMLA leave had expired and Payne was no longer protected under the FMLA.[129] In his original motion to dismiss, which is adopted by reference in his re-urged motion to dismiss, Devall also argued that Payne had not alleged that Devall was her "employer" under the FMLA.[130] In opposition, Payne asserts that Devall acted as her employer when he placed her on administrative leave.[131] She argues that Devall placed her on leave the day she returned to work, which she contends shows a causal connection between her leave and his decision to retaliate against her.[132]

Under the FMLA, a covered employer must "allow an eligible employee up to twelve weeks of unpaid leave if the employee suffers from 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'"[133] When an eligible employee returns from FMLA leave, the employer must restore the employee to the same position he or she previously held or to "an equivalent position with equivalent employment benefits, pay,

---

[128] Rec. Doc. 65-1 at 5.

[129] *Id.* at 5–6.

[130] Rec. Doc. 47-1 at 9.

[131] Rec. Doc. 74 at 12.

[132] *Id.*

[133] *Caldwell v. KHOU-TV*, No. 16-20408, 2017 WL 892439, at *5 (5th Cir. Mar. 6, 2017) (quoting *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 763 (5th Cir. 2001) (quoting 29 U.S.C. § 2612(a)(1)(D)), *abrogated on other grounds by Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702 (5th Cir. 2016)).

and other terms and conditions of employment."[134] To protect an employee's right to take leave, the FMLA prohibits employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right" provided by the Act.[135] Accordingly, the FMLA contains two distinct provisions. The first provision "creates substantive rights, such as the right of the employee to be restored to the same or equivalent position she held when her leave commenced. The second provision protects employees from retaliation for exercising these rights."[136]

Payne appears to allege that Devall interfered with her substantive rights under the FMLA by failing to restore her to the same or equivalent position that she held when her leave commenced, and that Devall retaliated against her for exercising her FMLA rights. Devall contends that it was not an FMLA violation to place Payne on administrative leave the day she returned from her FMLA leave because the 12 week period for FMLA leave had expired and Payne was no longer protected under the FMLA.[137] As noted above, under the FMLA, a covered employer must "allow an eligible employee up to twelve weeks of unpaid leave if the employee suffers from 'a serious health condition. . . .'"[138] "If an employee fails to return to work on or before the date that FMLA leave expires, the right to reinstatement also expires."[139] If an employee

---

[134] *Hunt*, 277 F.3d at 763 (citing 29 U.S.C. § 2614(a)(1)); *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999).

[135] *Caldwell*, 2017 WL 892439, at *5 (citing 29 U.S.C. § 2615(a)(1)).

[136] *Silva v. City of Hidalgo, Tex.*, 575 F. App'x 419, 424 (5th Cir. 2014) (citing *Mauder v. Metro. Transit Auth. Of Harris Cnty., Tex.* 446 F.3d 574, 580 (5th Cir. 2006)).

[137] Rec. Doc. 65-1 at 5–6.

[138] *Caldwell*, 2017 WL 892439, at *5 (quoting 29 U.S.C. § 2612(a)(1)(D)).

[139] *Hunt*, 277 F.3d at 763.

does not attempt to return to work before her FMLA expired, an employer "is no longer under an express statutory duty to reinstate her to her former position or to an equivalent position."[140]

Payne alleges that she took sick leave from September 30, 2013 to April 16, 2014.[141] Payne alleges that her sick leave exceeded 12 weeks, but she does not allege what part of this period was FMLA leave. Moreover, Payne does not allege whether she attempted to return to work before her FMLA leave expired. Therefore, the Court concludes that Payne has failed to allege sufficient facts to state a FMLA interference claim against Devall.

Payne also alleges that Devall retaliated against her for taking FMLA leave. To make a prima facie showing of retaliation under the FMLA, an employee must show that: "(1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) that she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because she took FMLA leave."[142] The Fifth Circuit has noted that a plaintiff need not establish a violation of the substantive, prescriptive provisions of the FMLA to allege a retaliation claim because "[t]he FMLA's against retaliation is not limited to periods in which an employee is on FMLA leave, but encompasses the employer's conduct both during and after the employee's FMLA leave."[143] Therefore, the fact that an employee exceeds her 12 weeks of FMLA leave before attempting to return to work does not preclude an FMLA

---

[140] *Id.* at 764.

[141] Rec. Doc. 1 at 4.

[142] *Hunt*, 277 F.3d at 768.

[143] *Id.* at 768–69.

retaliation claim.[144] Accordingly, Payne would not be precluded from bringing an FMLA retaliation claim if her FMLA leave exceeded 12 weeks.

However, to state a valid FMLA retaliation claim, Payne must also allege that Devall was her employer for purposes of the FMLA.[145] Pursuant to the Code of Federal Regulations regarding the Family and Medical Leave Act, an employer is defined as follows:

> [A]ny person engaged in commerce or in any industry or activity affecting commerce, who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. Employers covered by FMLA also include any person acting, directly or indirectly, in the interest of a covered employer to any of the employees of the employer, any successor in interest of a covered employer, and any public agency.[146]

The Fifth Circuit has held that a public employee who "acts, directly or indirectly, in the interest of an employer," satisfies the definition of employer under the FMLA, and therefore, may be subject to liability in his individual capacity.[147] The Fifth Circuit has also frequently noted that the definition of "employer" under the FMLA is "very similar" to the definition of "employer" under the Fair Labor Standards Act ("FLSA").[148] Thus, the Fifth Circuit has determined that "[t]he fact that Congress, in drafting the FMLA, chose to make the definition of 'employer' materially identical to that in the FLSA means that decisions interpreting the FLSA offer the best guidance for construing the term 'employer' as it is used in the FMLA."[149] Accordingly, pursuant to the

---

[144] *Id.*

[145] *Modica v. Taylor*, 465 F.3d 174, 183 (5th Cir. 2006).

[146] 29 C.F.R. § 825.104(a).

[147] *Modica*, 465 F.3d at 184.

[148] *Id.* at 186 (citing 29 U.S.C. § 203(d)).

[149] *Id.* (quoting *Wascura v. Carver*, 169 F.3d 683, 686 (11th Cir. 1999)).

Fifth Circuit's instructions, this Court will look to FLSA's definition of "employer" as guidance to determine whether Devall is an "employer" under the FMLA.

Similarly to the FMLA, the FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."[150] The Fifth Circuit has held that FLSA's definition of employer is "sufficiently broad to encompass an individual who, though lacking a possessory interest in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees."[151] Moreover, to determine if an individual is an employer under the FLSA, the Fifth Circuit has stated that courts should consider "whether the alleged employer (1) has the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."[152]

In the original complaint, Payne alleges that from "September 30, 2013 to April 16, 2014, she exercised her sick leave rights," and on April 16, 2014, Devall placed her on administrative leave.[153] In the amended complaint, Payne alleges that "the Hammond Police Department and the City of Hammond were, at all pertinent times, the employers of certain of the named defendants herein, and vested with the hiring, training and supervision of their employees."[154] Payne also

---

[150] *Id.*; *see* 29 U.S.C. § 203(d).

[151] *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993) (quoting *Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 196 (5th Cir. 1983)); *see also Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984).

[152] *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990) (internal citations omitted).

[153] Rec. Doc. 1 at 4, 6.

[154] Rec. Doc. 3 at 2.

alleges that "Defendants have violated . . . the Family and Medical Leave Act of 1993, 29 U.S.C. §2601, et seq, Louisiana state law and City of Hammond General Orders by retaliating against Plaintiff, invading her privacy, falsely arresting her, publicizing her photo and address and placing her on administrative leave."[155] In the Rule 7(a)(7) reply, Payne alleges that in October 2013, because she requested sick leave under the FMLA, she was required to meet with the City of Hammond's director of personnel, Loretta Severan, and the City of Hammond's director of administration, Pete Panepinto, at Hammond City Hall."[156] Payne further alleges that she was placed on administrative leave the day she returned from her FMLA leave, and that Devall's actions violated her right to FMLA leave.[157]

Payne asserts that Devall is liable under the FMLA as her employer because he placed her on administrative leave.[158] As stated *supra*, the Fifth Circuit, in interpreting FLSA's substantially similar definition of "employer," has determined that a person can be an "employer" when he or she "effectively dominates [the employer corporation's] administration" or "has the power to act[] on behalf of the corporation vis-à-vis its employees."[159] Here, Payne has failed to plausibly allege that Devall "effectively dominates" the Hammond Police Department's administration or otherwise has "the power to act" on behalf of the Hammond Police Department to its employees.[160]

---

[155] *Id.* at 3.

[156] Rec. Doc. 54 at 2.

[157] *Id.* at 3, 6.

[158] Rec. Doc. 74 at 12.

[159] *Reich*, 998 F.2d at 329.

[160] *Id.*

Additionally, as stated *supra*, the Fifth Circuit has instructed that courts should consider whether the alleged employers have "the power to hire and fire the employees," supervise or control the employee's "work schedules or conditions of employment," determine the "rate and method of payment," and maintain employment records.[161] Likewise, the Supreme Court has interpreted FLSA's "employer" definition to include persons with "managerial responsibilities" and "substantial control of the terms and conditions of the [employer's] work."[162] However, Payne's complaint, her amended complaint, and her Rule 7(a)(7) reply fail to allege that any of these factors are met, as Payne's only allegation is that Devall placed her on administrative leave the day she returned from FMLA leave.[163] It is unclear if Devall had the authority to make the ultimate decision to deny Plaintiff's rights under the FMLA. Moreover, Payne has not alleged that Devall had sufficient managerial responsibilities or control over Payne's employment at the Hammond Police Department, rate of pay, or employment records such that he could be considered an "employer" under the FMLA. Therefore, the Court concludes that Payne has failed to allege sufficient facts to state a FMLA retaliation claim against Devall.

### 5.    Amendment to Pleadings

Dismissal is a harsh remedy, and the Court is cognizant of the Fifth Circuit's instruction that a motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted."[164] Short of granting a motion to dismiss, a court may grant a plaintiff leave to amend his complaint.[165]

---

[161] *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990) (internal citations omitted)

[162] *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971–72 (5th Cir. 1984).

[163] Rec. Doc. 1 at 6; Rec. Doc. 54 at 3.

[164] *Beanal v. Freeport-McMoran, Inc,* 197 F.3d 161, 164 (5th Cir. 1999).

[165] See *Carroll v. Fort James Corp*., 470 F.3d 1171, 1175 (5th Cir. 2006) ("This standard 'evinces a bias in favor of granting leave to amend. The policy of the Federal Rules is to permit liberal amendment.'") (quoting *Dussouy*

"In deciding whether to grant leave to amend, the district court may consider a variety of factors in exercising its discretion, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[166] Here, Payne does not explain how amendment could cure the deficiencies in her FMLA claims. Nevertheless, the Court, in its discretion, will grant Payne leave to amend her FMLA claims by April 19, 2017, if she can show that amendment will address the issues identified by the Court. If Payne is unable to do so by the Court's deadline, the Court will dismiss these claims. However, the Court will not allow Payne to amend her complaint regarding her claim under Louisiana Revised Statute § 40:2532 as amendment would be futile. The Court also will not allow Payne to amend her Section 1983 claims against Devall because it has already granted Payne leave to file a Rule 7(a)(7) reply, and further amendment would be futile as the Court has concluded that Devall is entitled to qualified immunity on the Section 1983 claims.

Moreover, the Court notes that in her opposition to Devall's motion Payne, for the first time, contends that Devall is liable under Louisiana Revised Statute § 33:2214(B)(1). Louisiana Revised Statute § 33:2214(B)(1) provides that "[e]ach employee of the police departments of the municipalities covered by this Subpart . . . shall be entitled to and given with full pay a sick leave aggregating not less than fifty-two weeks during any calendar year when the conditions actually warrant." In her first amended complaint, Payne alleges that the defendants violated "Louisiana state law . . . retaliating against Plaintiff, invading her privacy, falsely arresting her, publicizing

---

*v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981)).

[166] *See Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

her photo and address and placing her on administrative leave."[167] Nowhere in her complaint does Payne allege a violation of Louisiana Revised Statute § 33:2214(B)(1). A new claim cannot be raised in opposition to a motion to dismiss. However, the Fifth Circuit has held that "[g]enerally, a new claim or legal theory raised in response to a dispositive motion should be construed as a request for leave to amend the complaint, and the district court should determine whether leave should be granted."[168] Payne presents no argument as to why she should be allowed leave to amend her complaint to allege a claim under Louisiana Revised Statute § 33:2214(B)(1). However, because the Court has granted Payne leave to amend her FMLA claim, the Court will also grant Payne leave to amend her complaint to allege a claim under Louisiana Revised Statute § 33:2214(B)(1).

## IV. Conclusion

For the reasons stated above, Devall is entitled to qualified immunity on Payne's Section 1983 claims. Payne has failed to state a claim against Devall under Louisiana Revised Statute § 40:2532. The Court also concludes that Payne has failed to state a claim pursuant to the FMLA against Devall. Therefore, the Court is inclined to grant the motion to dismiss as to this claim. However, the Court will deny the motion without prejudice as to this claim and allow Payne until April 19, 2017, to amend her complaint to cure the deficiencies noted, if possible.

---

[167] Rec. Doc. 3 at 3.

[168] *Pierce v. Hearne Ind. Sch. Dist.*, 600 F. App'x 194, 200 (5th Cir. 2015) (citing *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 989 n. 2 (5th Cir. 2008)).

**IT IS HEREBY ORDERED** that Defendant Roddy Devall's "Reurged Motion to Dismiss"[169] is **GRANTED IN PART AND DENIED IN PART.** The motion is **GRANTED** to the extent it seeks dismissal of Payne's Section 1983 claim and her conspiracy claim. The motion is **DENIED WITHOUT PREJUDICE** to the extent it seeks dismissal of Payne's FMLA claim and Louisiana Revised Statute § 33:2214(B)(1) claim.

**IT IS FURTHER ORDERED** that Payne is granted leave to amend her complaint by April 19, 2017. If Payne is unable to cure the deficiencies in the complaint by that time, upon motion by a party, the Court will dismiss Payne's claims pursuant to the FMLA and Louisiana Revised Statute § 33:2214(B)(1) against Devall.

**NEW ORLEANS, LOUISIANA**, this 29th day of March, 2017.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[169] Rec. Doc. 65.